## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MICHAEL CARROLL,

       Plaintiff,

vs.                                                                    No. CIV 10-0588 JB/ACT

CITY OF ALBUQUERQUE,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Remand to State Court, filed July 1, 2010 (Doc. 5). The Court held a hearing on August 18, 2010. The primary issue is whether section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, completely preempts Plaintiff Michael Carroll's claims of breach of implied employment contract based on Defendant City of Albuquerque's polices. Because section 301 governs claims substantially dependent on analysis of a collective-bargaining agreement, and the Court finds that Carroll's breach-of-implied-employment-contract claims are substantially dependent on his union's collective-bargaining agreement with the City of Albuquerque, the Court finds that the LMRA completely preempts those claims. The Court will therefore deny Carroll's motion to remand. The Court will exercise supplemental jurisdiction over Carroll's New Mexico Whistleblower Protection Act claim.

## FACTUAL BACKGROUND

The City of Albuquerque first employed Carroll on July 10, 1989. See Complaint for Damages ¶ 5, at 1 (filed in state court April 30, 2010), filed June 18, 2010 (Doc. 1-1)("Complaint"), Exhibit to Notice of Removal of Action by Defendant City of Albuquerque Pursuant to 28 U.S.C.

Sections 1331, 1441, 1443 and 1446 ("Notice of Removal").  According to Carroll's Complaint, in about 1998, the City of Albuquerque terminated his employment in retaliation for his speech regarding matters of public concern.  See Complaint ¶ 6, at 2.  On February 15, 1999, the City of Albuquerque entered into a Settlement Agreement reinstating Carroll, making him a "Traffic Engineering Program Specialist at grade MP02, step 3," and paying him back wages.  Id. ¶ 7, at 2.  Some time after December 1999, the City of Albuquerque eliminated the position of Traffic Program Specialist MP02 -- Carroll's position.  See id. ¶ 8, at 2.  Some time in 2001 or thereafter, the City of Albuquerque changed Carroll's title to Traffic Program Assistant M-13.  See id. ¶ 10, at 2.  Carroll alleges that the City of Albuquerque did not approve or post a job description for this job title.  See id. ¶ 10, at 2.  Carroll further alleges that he was never officially placed in a Traffic Program Assistant position, "because such position has never and does not now exist in the City personnel system."  Id. ¶ 12, at 3.  Carroll alleges that, per an Inter-Office Memorandum from Chief Administrative Officer Bruce J. Perlman, dated September 26, 2006 ("Inter-Office Memorandum"), a Position Control Form B3 is required for the creation of any new position.  See id. ¶ 14, at 3.  He also alleges that the City of Albuquerque Personnel Rules and Regulations ("Personnel Rules and Regulations") Section 602 requires that a Position Control Form must be submitted to request creation of a new position.  See id. ¶ 14, at 3.  According to Carroll, the City Human Resource Department Personnel Procedures Manual ("Procedures Manual"), Chapter 2, No. 2-1, requires the processing of a Position Control Form B3 to create, delete, and change positions within the City of Albuquerque.  See id. ¶ 14, at 3.  The City of Albuquerque denies all of these alleged requirements.  See Defendant City of Albuquerque's Answer to Complaint for Damages ¶ 14, at 3, filed July 6, 2010 (Doc. 6).

Carroll also alleges that, in March 2002, the City of Albuquerque negligently, maliciously,

and with retaliatory intent, changed his employment status from "reinstatement" to "rehire," thereby causing Carroll to lose his seniority status and changing his rate of accrual for vacation and sick leave.  Complaint ¶ 18, at 4.  Carroll filed a complaint, through his employment union, the American Federation of State, County, and Municipal Employees ("AFSCME"), with the City of Albuquerque's Human Resources Department.  See id. ¶ 18, at 4.  The City of Albuquerque corrected the revision.  See id. ¶ 18, at 4.  In February 2003, Carroll discovered that the City of Albuquerque had again revised his employment status from "reinstatement" to "rehire," and, after AFSCME filed a union grievance to correct the revision, in November 2003, the City of Albuquerque corrected the revision.  See id. ¶ 19, at 4.  Carroll alleges that he has been involved in a number of disputes with the City of Albuquerque.  See id. ¶¶ 20-24, at 4-5.

Carroll alleges that the City of Albuquerque changed his position from "Specialist" to "Assistant" in retaliation for his protected activities.  See id. ¶ 25, at 5.  He further alleges that, if the City of Albuquerque had reclassified him as a Traffic Program Specialist E16, he would have received a raise, and alleges that the City of Albuquerque's actions entitle him to lost past and future wages and benefits as a result of its retaliatory conduct.  See id. ¶ 30, at 6.  He also alleges that he applied for an open position of Traffic Program Specialist E16, but the position was given to Pam Castillo, who was less qualified than Carroll for the position.  See id. ¶¶ 33-42, at 7-8.  Carroll alleges the hiring of Castillo over him was in retaliation for his protected activities.  See id. ¶ 42, at 8.  He alleges the City of Albuquerque has retaliated against him in other ways, including revoking his access to the 311 database,[1] prohibiting him from attending staff meetings, requiring

---

[1] Carroll's Complaint does not explain what the 311 database is.  The Court knows from another case, however, that the City of Albuquerque maintains a 311 Citizen Contact Center, through which it offers non-emergency city services to citizens who call.  See Gonzales v. City of Albuquerque, No. CIV 09-0520 JB/RLP, 2010 WL 553308, at *1 (D.N.M. Feb. 9, 2010)(Browning,

him to meet with managers weekly who inform him he is poorly performing his duties, and giving him poor performance evaluations.  See id. ¶¶ 45-54, at 9-10.

## PROCEDURAL BACKGROUND

On April 30, 2010, Carroll filed his Complaint for Damages in the Second Judicial District Court, County of Bernalillo, New Mexico.  In his Complaint, Carroll asserts four claims against the City of Albuquerque.  His first claim is that the City of Albuquerque's alleged retaliatory actions violated the New Mexico Whistleblower Protection Act, NMSA 1978, § 10-18-3.  See Complaint ¶¶ 56-61, at 10-11.  His second claim, titled "Breach of Implied Employment Agreement: No Official Position," alleges that the Inter-Office Memorandum, Personnel Rules and Regulations, and the Procedures Manual constitute implied employment agreements, and that the City of Albuquerque breached these implied agreements when it placed Carroll in the position of "Traffic Program Assistant," which Carroll alleges does not exist.  Complaint ¶¶ 62-65, at 11-12.  His third claim, titled "Breach of Implied Employment Contract: Failure to Hire Best Qualified Person," alleges that the City of Albuquerque Merit System Ordinance ("Merit System Ordinance") requires vacant positions to be filled with "the best qualified candidates," and that the Personnel Rules and Regulations require that the City of Albuquerque fill vacant positions with "the best qualified candidate," and select candidates for promotion and transfer "on the basis [of] education, experience, training, skills and other abilities."  Complaint ¶ 66, at 12-13.  Carroll alleges that these ordinances and regulations constitute an implied employment contract, and that the City of Albuquerque breached the implied employment contract when it hired Castillo for the position of Traffic Program Specialist over Carroll.  See Complaint ¶¶ 67-68, at 13.  Carroll's fourth claim, titled "Breach of

_____

J.).

Implied Employment Contract: Retaliation," alleges that the City of Albuquerque's Employee Equity Office has implemented a written policy prohibiting retaliation against an employee who asserts his or her civil rights or who participates in a civil rights investigation, and that the policy creates an implied employment contract, which the City of Albuquerque breached by retaliating against Carroll for asserting his civil rights and participating in a civil rights investigation. See Complaint ¶¶ 71-75, at 13-14.

On June 18, 2010, the City of Albuquerque removed the case to federal court, on the grounds that: "In his Complaint, plaintiff expressly alleges that defendant violated his civil rights in connection with alleged retaliation against plaintiff for asserting his civil rights, claiming race discrimination and participating in a civil rights investigation." Notice of Removal ¶ 2, at 1. The Notice of Removal further states: "Given plaintiff's express federal claim against defendant, this case may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C. § 1441, 1443 and 1446." Notice of Removal ¶ 3, at 1.

On July 1, 2010, Carroll filed a motion to remand the case to state court. Carroll moves the Court to remand the case, because he alleges that he asserts only state claims. He contends that his fourth claim, which alleges that the City of Albuquerque retaliated against him in violation of its policy, is a breach-of-implied-contract claim. See Motion at 1-2. Carroll argues that he has explained to the City of Albuquerque that he intends to pursue no federal causes of action. See Motion at 2.

In response, the City of Albuquerque argues that section 301 of the LMRA preempts some of Carroll's claims. See Defendant City of Albuquerque's Response to Plaintiff's Motion for Remand, filed July 15, 2010 (Doc. 7)("Response"). The City of Albuquerque contends that a significant portion of Carroll's Complaint is based on an alleged breach of a settlement agreement

between Carroll and the City of Albuquerque, asserting that the City of Albuquerque breached its settlement agreement by disregarding the provision setting his continuous service date.  See Response at 4.  The City of Albuquerque also argues that the collective-bargaining agreement between the City of Albuquerque and Carroll's union, Local 3022 AFSCME, contains provisions prohibiting "retaliation, discrimination, restraint, coercion or reprisal as a result of filing a grievance or participating in the procedure."  Exhibit to Response, Agreement Between the City of Albuquerque and Local 3022 AFSCME, Council 18, AFL-CIO § 25.1.9, at 11 ("CBA"), filed July 15, 2010 (Doc. 7-2).  These provisions of the CBA also set out the process that governs reclassification of employment positions and promotional procedures.  See CBA § 20, at 9-10.  The City of Albuquerque contends that, because the CBA "establishes methodology for the issues raised by plaintiff in his Complaint, plaintiff's contract claims 'inevitably require an analysis of what the CBA permitted." Response at 6.

At the hearing, Pia Gallegos, Carroll's attorney, argued that it is not necessary to look to the CBA to determine whether the City of Albuquerque's policies give rise to an implied employment contract.  See Transcript of Hearing at 3:3-25 (taken Aug. 18, 2010)(Gallegos)("Tr.").[2]  She argued that the City of Albuquerque's personnel rules are completely independent of the CBA.  See Tr. at 5:2-19 (Gallegos).  She also argued that the elements of a Whistleblower Protection Act claim are independent of any information in the CBA.  See Tr. at 10:12-11:10 (Gallegos).  In response, Deborah Wells, the City of Albuquerque's attorney, argued that the protected activities Carroll alleges give rise to his Whistleblower Protection Act claim involve him filing a grievance with his union pursuant to the CBA.  See Tr. at 11:22-12:13 (Wells). Ms. Wells argued that, to evaluate

_____

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

whether the City of Albuquerque's actions were appropriate, the Court will have to look to the procedures in the CBA.  <u>See</u> Tr. at 12:1-13 (Wells).  She also argued that, under New Mexico law, the Court must look at all representations an employer makes to an employee and that the Court cannot ignore the representations in the CBA.  <u>See</u> Tr. at 14:7-24 (Wells).  She further argued that the Court must interpret the terms of the CBA as they relate to Carroll's claims, because the City of Albuquerque acted appropriately when reclassifying positions and following procedures on promotional policies and procedures.  <u>See</u> Tr. at 15:3-16:5 (Wells).

### <u>RELEVANT LAW REGARDING REMOVAL</u>

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The right to removal is a statutory right, and the removing defendant must carefully follow all statutory requirements.  <u>See</u> <u>Bonadeo v. Lujan</u>, No. CIV 08-0812, 2009 U.S. Dist. LEXIS 45672, at *9-10 (D.N.M. Apr. 30, 2009)(Browning, J.); <u>Chavez v. Kincaid</u>, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The right to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").  Section 1446 of Title 28 of the United States Code, which controls the procedure for removal of a state action to federal court, states:

> A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a).  The defendant must file the notice of removal within thirty days after being served.  <u>See</u> 28 U.S.C. § 1446(b).  "[T]he statute, insofar as the time for removal is concerned, is

imperative and mandatory, must be strictly complied with, and is to be narrowly construed." United States ex rel. Walker v. Gunn, 511 F.2d 1024, 1026 (9th Cir. 1975).  See Fajen v. Foundation Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982)("Removal statutes are to be strictly construed, and all doubts are to be resolved against removal.")(internal citations omitted).

The removing defendant bears the burden of establishing that removal is proper.  See McPhail v. Deere & Co., 529 F.3d 947, 953 (10th Cir. 2008)("[A]ccording to this and most other courts, the defendant is required to prove jurisdictional facts by a 'preponderance of the evidence'"); Bonadeo v. Lujan, 2009 U.S. Dist. LEXIS 45672, at *10 ("As the removing party, the defendant bears the burden of proving 'all jurisdictional facts and of establishing a right to removal.'")(quoting Chavez v. Kincaid, 15 F. Supp. 2d at 1119).  The United States Court of Appeals for the Tenth Circuit has explained that, "[g]iven the limited scope of federal jurisdiction, there is a presumption against removal, and courts must deny such jurisdiction if not affirmatively apparent on the record." Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005). See Bonadeo v. Lujan, 2009 U.S. Dist. LEXIS 45672, at *11 ("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").

A civil action filed in a state court may be removed to federal court if the claim arises under federal law.  See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003); 28 U.S.C. § 1441(a).  "To determine whether the claim arises under federal law, [the court] examines the 'well pleaded' allegations of the complaint and ignore[s] potential defenses . . . ."  Beneficial Nat'l Bank v. Anderson, 539 U.S. at 6.  "The [well-pleaded-complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." Beneficial Nat'l

-8-

Bank v. Anderson, 539 U.S. at 6.

A state claim may be removed to federal court in only two circumstances -- when Congress expressly so provides or when a federal statute wholly displaces the state-law cause of action through complete preemption.[3]  See Beneficial Nat'l Bank v. Anderson, 539 U.S. at 8.  "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."  Beneficial Nat'l Bank v. Anderson, 539 U.S. at 8.  The Supreme Court of the United States has recognized complete preemption as to three federal laws: (i) the LMRA, 29 U.S.C. § 185, see Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560 (1968); (ii) the National Bank Act, 12 U.S.C. §§ 85, 86, see Beneficial Nat'l Bank v. Anderson, 539 U.S. at 8; and (iii) the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1132 ("ERISA"), see Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 62-63 (1987).

## LAW REGARDING LMRA PREEMPTION

In Caterpillar Inc. v. Williams, the Supreme Court articulated the doctrine of complete preemption as follows:

> On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Metropolitan Life Ins. Co. [v. Taylor, 481 U.S. 58, 65 (1987)].  Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.  See Franchise Tax Bd. [of State of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 24 (1983)]("If a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law").

---

[3] A state claim can also be removed using supplemental jurisdiction, provided that another claim in the complaint is removable.  See 28 U.S.C. § 1367(a).

Caterpillar Inc. v. Williams, 482 U.S. at 393.  Section 301 of the LMRA has been held to possess this preemptive force.  See Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. at 23. "Section 301 of the LMRA governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement, although it does not contain an explicit preemption provision."  Felix v. Lucent Techs., Inc., 387 F.3d 1146, 1163-64 (10th Cir. 2004)(internal quotations, footnotes and citations omitted).

> **1.      General Preemption Principles Under LMRA.**

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  The Tenth Circuit has explained that section 301 "preempts questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, . . . whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort."  Cisneros v. ABC Rail Corp., 217 F.3d 1299, 1302 (10th Cir. 2000)(internal quotations and citation omitted).

In Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985), the Supreme Court set forth the standard for determining when section 301 completely preempts a state law claim: "When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." 471 U.S. at 220 (citation omitted).  In Allis-Chalmers Corp. v. Lueck, the plaintiff brought a state tort claim against his employer for the

bad-faith processing of an insurance claim.  See 471 U.S. at 206.  The Supreme Court concluded that

section 301 completely preempted the cause of action, because "the duties imposed and rights

established through the state tort . . . derive from the rights and obligations established by the

[collective-bargaining] contract," and resolution of the dispute would therefore "inevitably . . .

involve contract interpretation."  471 U.S. at 217-18.  The Supreme Court noted, however, that "it

would be inconsistent with congressional intent under [section 301] to pre-empt state rules that

proscribe conduct, or establish rights and obligations, independent of a labor contract."  471 U.S.

at 212.

Subsequently, in Caterpillar Inc. v. Williams, the Supreme Court considered whether section

301 permitted employees, who were covered by a collective-bargaining agreement, to bring state-

law contract claims for breach of individual contracts between each employee and their employer.

After reiterating that section 301 "governs claims founded directly on rights created by

collective-bargaining agreements, and also claims substantially dependent on analysis of a collective

bargaining agreement," the Supreme Court concluded that the employees' state claims for breach

of their individual employment contracts were not preempted.  482 U.S. at 394 (internal quotation

omitted). The Supreme Court reasoned:

> Section 301 says nothing about the content or validity of individual employment
> contracts.  It is true that respondents, bargaining unit members at the time of the
> plant closing, possessed substantial rights under the collective agreement, and could
> have brought suit under § 301.  As masters of the complaint, however, they chose not
> to do so.
>
> Moreover, . . . respondents' complaint is not substantially dependent upon
> interpretation of the collective-bargaining agreement.  It does not rely upon the
> collective agreement indirectly, nor does it address the relationship between the
> individual contracts and the collective agreement.

482 U.S. at 394-95.  See Voilas v. Local # 731 Int'l Union, United Auto. Aerospace & Agricultural

-11-

Implement Workers of Am., 170 F.3d 367, 373-74 (3d Cir. 1999)(stating that "under Caterpillar, employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as pleaded does not require interpretation of the collective bargaining contract").

> ### 2.   Determining Whether Claims Are Inextricably Intertwined with Existing Provisions of a Collective-Bargaining Agreement.

"Preemption arises only when an 'evaluation of the . . . claim is *inextricably intertwined* with consideration of the terms of the labor contract.'" Mowry v. UPS, 415 F.3d 1149, 1152 (10th Cir. 2005)(quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. at 213)(emphasis in original). "As long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 410 (1988).

In Lingle v. Norge Division of Magic Chef, Inc., the Supreme Court considered whether section 301 completely preempted an employee's state-law retaliatory discharge claim against her employer. The Supreme Court's analysis focused first upon the elements necessary to make a prima-facie retaliatory discharge claim under the relevant state law: (i) discharge or a threat of discharge; and (ii) a motive to deter the employee from exercising her rights. These elements, the Supreme Court noted, constituted "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer," neither of which "require[d] a court to interpret any term of a collective-bargaining agreement." 486 U.S. at 407. Accordingly, the Supreme Court concluded that the employee's state claim was "independent" of the relevant collective-bargaining agreement for purposes of section 301, because "resolution of the state-law claim did not require construing the collective bargaining agreement." 486 U.S. at 407. Morever,

the Supreme Court found it irrelevant that "the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether [the employee] was fired for just cause [under her collective-bargaining agreement]." 486 U.S. at 408. "[S]uch parallelism," according to the Supreme Court, would not "render[] the state-law analysis dependent upon the contractual analysis." 486 U.S. at 408. The Supreme Court opined that the reason for this principle was that

> § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

486 U.S. at 409-10.

In <u>Mowry v. UPS</u>, the Tenth Circuit evaluated each of the plaintiff's claims "to determine whether they [were] 'inextricably intertwined' with existing provisions of his collective-bargaining agreement and, as a result, preempted by § 301 of the LMRA." 415 F.3d at 1152. The plaintiff's first claim -- retaliatory discharge in violation of public policy -- was based on his allegation that UPS terminated him for refusing to drive when weather and road conditions posed a risk of injury, in violation of statutory regulations stating that commercial drivers must discontinue operation of vehicles in dangerous conditions. <u>See</u> 415 F.3d at 1152-53. The plaintiff argued that, based on the statutory and regulatory provisions, his retaliatory discharge claim was subject to evaluation independent of any interpretation of the collective-bargaining agreement and, as a result, was not preempted by section 301. <u>See</u> 415 F.3d at 1153. The defendant countered that the claim was preempted, because: (i) each of the statutory and regulatory provisions on which the plaintiff relied

were expressly incorporated into the collective-bargaining agreement, and thus resolution of his retaliation claim necessarily would involve an interpretation of the collective-bargaining agreement; and (ii) each element of the retaliation claim required or was substantially dependent on interpretation of the collective-bargaining agreement, and thus the claim and the collective-bargaining agreement were inextricably intertwined.  See 415 F.3d at 1153.  The Tenth Circuit was not persuaded by the defendant's assertion that resolution of the plaintiff's retaliatory discharge claim involved interpretation of the collective-bargaining agreement solely because it expressly incorporated the statutory provisions upon which the plaintiff relied.  See 415 F.3d at 1153.  "To the contrary, it actually makes the [collective-bargaining agreement] dependent on interpretations of federal and state safety regulations."  415 F.3d at 1153.  The Tenth Circuit concluded that the plaintiff's state-law retaliation claim was not preempted solely because the collective-bargaining agreement incorporated the safety regulations upon which he based his claim.  See 415 F.3d at 1153. The Tenth Circuit, nevertheless, found that section 301 of the LMRA preempted the plaintiff's second claim -- that the defendant "shorted his [pay]checks and he was discharged" because he complained about inadequate pay.  415 F.3d at 1157.  The Tenth Circuit explained:

> In order to resolve the claim, a court would have to determine what work [the plaintiff] performed, when he worked, whether delays occurred and, if so, whether he was entitled to be paid for those delays.  The court would also have to determine what wages he should have been paid, what wages he actually was paid, whether he was underpaid, and, if so, the amount of the shortfall.  All of these issues are regulated by the [collective-bargaining agreement] and, thus, require consideration of the collective bargaining agreement.  Article 17 of the [collective-bargaining agreement] expressly assures full payment for all hours worked and specifically addresses rates of pay, computation of time worked, credit for certain delays that occur through no fault of the employee, and procedures for obtaining full payment of wages.  In sum, because [the plaintiff's] wage and compensation claim is substantially dependent on analysis of the wage and compensation provisions of the collective bargaining agreement, that claim is preempted by federal labor law.

415 F.3d at 1157.  The Tenth Circuit also found that section 301 preempted the plaintiff's third

claim -- that the termination constituted intentional infliction of emotional distress.  See 415 F.3d at 1157.   The Tenth Circuit found that "determining whether [the defendant's] conduct in terminating [the plaintiff] was 'outrageous' requires construction of [the defendant's] rights and obligations under the [collective-bargaining agreement], as that is the reference point against which [the defendant's] action must be scrutinized."  415 F.3d at 1158 (internal citation and quotation omitted).

In Garley v. Sandia Corp., 236 F.3d 1200 (10th Cir. 2001), the plaintiff, among other claims, alleged a claim of breach of implied contract.  See 236 F.3d at 1206.  The plaintiff alleged that the defendant's code of ethics, personnel policies, and director's memorandum formed an express and implied contract, which the defendant breached when it failed to follow the criteria stated for progressive disciplinary policy.  See 236 F.3d at 1205.  The plaintiff argued that his claim was not founded on the collective-bargaining agreement, but rather was based exclusively on implied contracts that the defendant's personnel policy, code of ethics, and director's memorandum created.  See 236 P.3d at 210.  Consequently, the plaintiff argued that the collective-bargaining agreement was irrelevant to his claim and that a court had no need to interpret the collective-bargaining agreement.  See 236 F.3d at 1210.  The district court found that the breach-of-implied-contract claim revolved around the manner in which the defendant conducted its investigation of suspected employee misconduct and the way in which the plaintiff was terminated.  See 236 F.3d at 1206.  The district court cited the articles of the collective-bargaining agreement governing management of the business and treatment of employees performing council duties, and found that an analysis whether the defendant acted properly would inevitably require an analysis of the collective-bargaining agreement and what it permitted, and thus found section 301 preemption.  See 236 F.3d at 1206.  The Tenth Circuit affirmed the district court's finding of preemption with regards to the breach-of-

implied-contract claim.  See 236 F.3d at 1211.

In <u>Cumpston v. Dyncorp Tech. Servs.</u>, 76 F. App'x 861 (10th Cir. 2003), the plaintiff brought, among other claims, an implied-contract claim based on the defendant's business ethics standards, which forbade harassment of any nature.  See 76 F. App'x at 862.  He argued that the individual defendants' actions constituted proscribed harassment and that, by allowing such conduct, the defendant breached the duty it assumed -- separate from the collective-bargaining agreement -- by issuing the business ethics standards.  See 76 F. App'x at 863.  The district court disagreed, holding that, despite its separate origin, the implied-contract claim was inextricably intertwined with consideration of the terms of the collective-bargaining agreement, and that, thus, the LMRA preempted the claim.  See 76  F. App'x at 863.  The Tenth Circuit stated:

> It is difficult to say in the abstract whether [the defendant's] standards were intended to be read in conjunction with the [collective-bargaining agreement], but we need not resolve that question to decide the preemption issue in this case.  Even if there is no general intrinsic connection between the [collective-bargaining agreement] and the standards, consideration of the [collective-bargaining agreement] would still be necessary to assess the merit of plaintiff's allegations regarding breach of the implied contract for two particularized and interrelated reasons.  Because the prohibition on "harassment" set out in the standards is devoid of descriptive content, and the actions plaintiff complains of are not on their face so inherently or plainly wrongful as to make application of such a label ineluctable, there would be no way of telling whether the standards were violated here without consulting the [collective-bargaining agreement] to assess the opposing rights and privileges of the parties.  Thus, the [collective-bargaining agreement] would be indispensable to a proper resolution of the implied-contract claim, which is, therefore, preempted under the LMRA.

76 F. App'x at 864 (footnote omitted).

### 3.   <u>Distinction Between Interpretation of the Collective-Bargaining Agreement and Consultation of the Collective-Bargaining Agreement.</u>

"The Supreme Court has outlined a key distinction between a claim that involves interpretation of [collective-bargaining agreement] terms and one that involves mere reference to

those terms, with only the former requiring complete preemption under § 301 of the LMRA." <u>Felix v. Lucent Techs., Inc.</u>, 387 F.3d at 1164. "The mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 124 (1994)(citing <u>Lingle v. Norge Div. of Magic Chef</u>, 486 U.S. at 413 n.2). "Especially when the terms [of the collective-bargaining agreement] are undisputed, the court's limited reference to the collective-bargaining agreement to confirm damages is not sufficient to remove a state law claim on the ground that it is completely preempted by § 301 of the LMRA." <u>Felix v. Lucent Techs., Inc.</u>, 387 F.3d at 1165. <u>See</u> <u>Foy v. Pratt & Whitney Group</u>, 127 F.3d 229, 233 (2d Cir. 1997)(emphasizing difference between interpretation of a collective-bargaining agreement and consultation of a collective-bargaining agreement).

## LAW REGARDING SUPPLEMENTAL JURISDICTION

Section 1367 of Title 28 of the United States Code states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

18 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a claim that forms part of the same case or controversy if: (i) the claim raises a novel or complex issue of state law; (ii) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (iii) the district court has dismissed all claims over which it has original jurisdiction; or (iv) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. <u>See</u> 18 U.S.C. § 1367(c). A claim is part of the same case or controversy if it derives from a common nucleus of operative fact, such that the plaintiff would normally be

-17-

expected to try the claims in one proceeding.  See United Mine Workers of Am. v. Gibbs, 383 U.S.

715, 725-26 (1966); Price v. Wolford, 608 F.3d 698, 702-03 (10th Cir. 2010)(citation omitted).

### LAW REGARDING THE NEW MEXICO WHISTLEBLOWER'S PROTECTION ACT

The New Mexico Whistleblower Protection Act, NMSA 1978, § 10-18-3 provides:

A public employer shall not take any retaliatory action against a public employee
because the public employee:

> A. communicates to the public employer or a third party information about
> an action or a failure to act that the public employee believes in good faith
> constitutes an unlawful or improper act;

> B. provides information to, or testifies before, a public body as part of an
> investigation, hearing or inquiry into an unlawful or improper act; or

> C. objects to or refuses to participate in an activity, policy or practice that
> constitutes an unlawful or improper act.

NMSA 1978, § 10-18-3.  A "retaliatory action" for purposes of the Whistleblower Protection Act

means "taking any discriminatory or adverse employment action against a public employee in the

terms and conditions of public employment."  NMSA 1978, § 10-18-2D.  An "unlawful or improper

act" means a practice, procedure, action or failure to act on the part of a public employer that: (i)

violates a federal or state law, regulation, or administrative rule; (ii) constitutes malfeasance in

public office; or (iii) constitutes gross mismanagement, a waste of funds, an abuse of authority or

a substantial and specific danger to the public.  NMSA 1978, § 10-18-2E.  An action for violation

of the Whistleblower Protection Act must be filed within two years from the date on which the

retaliatory action occurred.  See NMSA 1978, § 10-18-6.

### NEW MEXICO LAW REGARDING IMPLIED EMPLOYMENT CONTRACTS

The Supreme Court of New Mexico has held that whether an implied employment contract

exists is a question of fact.  See Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728,

731, 918 P.2d 7, 10 (1996). "Under New Mexico law, a personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlined." Newberry v. Allied Stores, 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989)(citing Forrester v. Parker, 93 N.M. 781, 782, 606 P.2d, 191, 192 (1980)). "[W]hether an employee handbook has modified the employment relationship is a question of fact to be discerned from the totality of the parties' statements and actions regarding the employment relationship." Newberry v. Allied Stores, 108 N.M. at 427, 773 P.2d at 1234. See Hartbarger v. Frank Paxton, Co., 115 N.M. 665, 669, 857 P.2d 776, 780 (1993)("A promise, or offer, that supports an implied contract might be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct."). To create an implied contract, the terms of the representations in the employee handbook or personnel policies must be sufficiently explicit such that they create a reasonable expectation of an implied contract. See Trujillo v. N. Rio Arriba Elec. Co-op, Inc., 131 N.M. 607, 615-16, 41 P.3d 333, 341-42 (2001). The reasonableness of the expectation is measured by how definite, specific, or explicit the representation or conduct was. See Hartbarger v. Frank Paxton Co., 115 N.M. at 672, 857 P.2d at 783. The Supreme Court of New Mexico has emphasized, however, that "[e]mployers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract." Lukoski v. Sandia Indian Mgmt. Co., 106 N.M. 664, 666, 748 P.2d 507, 509 (1988).

## ANALYSIS

Carroll argues that, although there is a CBA between the City of Albuquerque and his union, his claims are independent from the CBA, and are based upon an implied employment contract

arising from the City of Albuquerque's policies.  The Court finds that Carroll's breach-of-implied-contract claims are substantially dependent on his union's CBA with the City of Albuquerque.  The Court thus finds that section 301 of the LMRA preempts Carroll's breach-of-implied-contract claims, and denies Carroll's motion to remand.  The Court will exercise supplemental jurisdiction over Carroll's New Mexico Whistleblower Protection Act claim.

I.      **SECTION 301 OF THE LMRA PREEMPTS CARROLL'S BREACH-OF-IMPLIED-CONTRACT CLAIMS.**

A claim of federal preemption is a defense to the allegations of a complaint, and therefore, under the well-pleaded complaint rule, a defendant's assertion that a plaintiff's claims are preempted by federal law ordinarily is not a proper basis to remove an action to federal court.  The exception is the  complete preemption corollary to the well-pleaded complaint rule.  Section 301 of the LMRA is one of the statutes that the Supreme Court has found may completely preempt a plaintiff's state claims.  The Supreme Court has held that the "preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization."  Avco Corp. v. Machinists, 390 U.S. at 558.  "Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301."  390 U.S. at 558.

Under section 301 of the LMRA, a district court may possess subject-matter jurisdiction over a removed complaint even where the federal question arises only in the context of a preemption defense.  When presented with a removed complaint involving a defense that a federal statute completely preempts state law, the court must decide whether any of the plaintiff's state-law claims are in fact preempted.  If any state-law claim is preempted, the court has subject-matter jurisdiction over the complaint and may permit the plaintiff to convert the preempted state-law claim to a federal

claim arising under the preemptive statute.  Cf. McCrary v. Aurora Pub. Schs., 57 F. App'x 362, 374 (10th Cir. 2003)("When a party's state law claims are preempted under § 301, the court must either dismiss the claims as preempted or treat them as arising under § 301.").   If none of the plaintiff's state-law claims is preempted, however, the plaintiff's complaint does not present a federal question, and the court must remand because it lacks subject-matter jurisdiction.[4]

The Supreme Court has stated that section 301 will completely preempt a state-law claim when resolution of the state-law claim is substantially dependent upon analysis of the terms of the CBA made between the parties.  See Caterpillar Inc. v. Williams, 482 U.S. at 395.  See also Allis-Chalmers Corp. v. Lueck, 471 U.S. at 213, 220 (stating that preemption analysis turns on whether the action confers rights on employers or employees "independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract"); Mowry v. UPS, 415 F.3d at 1157 ("[B]ecause [the plaintiff's] wage and compensation claim is substantially dependent on analysis of the wage and compensation provisions of the collective bargaining agreement, that claim is preempted by federal labor law.").

In making the preemption determination, the substance of Carroll's claims, not his

--------------------------------------------------

[4] It is important to note that, when a federal court initially performs its analysis with respect to whether a plaintiff's state-law claim is preempted under a completely preemptive federal statute, it does so for jurisdictional purposes.  In other words, if the district court determines that at least one of the plaintiff's state-law claims is preempted, then the court has subject-matter jurisdiction and has at the same time adjudicated the merits of the defendant's preemption defense.  By contrast, if the court determines that the federal statute does not preempt any of the plaintiff's state-law claims, and the court therefore remands the action to state court, then the federal court's conclusion that the plaintiff's state-law claims are not preempted -- an assessment which was made purely for jurisdictional purposes -- is not binding on the state court.  See Lyons v. Alaska Teamsters Employer Serv. Corp., 188 F.3d 1170, 1172 n.1 (9th Cir. 1999)("However, the preemption determination made for purposes of determining jurisdiction has no bearing on whether the defendant can actually establish a substantive preemption defense.").

characterization of the claims in his Complaint, controls.  See United Steelworkers of Am., AFL-CIO-CLC v. Rawson, 495 U.S. 362, 371-72 (1990)("Pre-emption by federal law cannot be avoided by characterizing the [defendant's] negligent performance of what it does on behalf of its members of the bargaining unit pursuant to the terms of the collective-bargaining agreement as a state-law tort.").   Carroll has characterized his claims as breach-of-implied-employment-contract claims. He alleges that the Inter-Office Memorandum, the Personnel Rules and Regulations, the Merit System Ordinance, and the Procedures Manual, give rise to his implied contract claims.  Carroll alleges that the policies set forth in these documents are independent of the CBA.  The Court, however, finds that these documents are interdependent on the CBA.  See Henderson v. Merck & Co., 998 F. Supp. 532, 538 (E.D. Pa. 1998)("Any contract [allegedly] formed by the employment manual would be concurrent with a collective bargaining agreement.").   The City of Albuquerque has identified several sections of the CBA that are material to its actions, which Carroll contends breached the alleged implied employment contract, including sections regarding pay provisions, salary schedule, seniority determination, promotional procedures, and policies and classification/recognition.  With these sections of the CBA in mind, it appears that a determination whether the City of Albuquerque "breached the terms" of the implied employment contract "would require interpretation" of certain provisions in the CBA.  Galway v. Smith's Food and Drug Center, Inc., No. 94-4224, 1995 WL 734423 , at *2 (10th Cir. Dec. 11, 1995).

Carroll contends that the Court does not need to interpret the CBA to address his breach-of-implied-contract claims.  The Court has carefully read the documents which Carroll argues give rise to implied employment contracts, and the Court believes that those documents are intended to be read in harmony with the CBA.  The Court believes this case is similar to the Tenth Circuit's decision in Garley v. Sandia Corp.  In that case, the plaintiff "contend[ed] that his [breach-of-

implied-contract] claim [was] not founded on the CBA but rather [was] based exclusively on implied contracts created by [the defendant's] Personnel Policy, Code of Ethics, and Director's Memo." 236 F.3d at 1210. The plaintiff argued "that a court has no need to interpret the [collective-bargaining agreement]." 236 F.3d at 1210. The Tenth Circuit disagreed, stating:

> Despite [the plaintiff's] emphatic protestations to the contrary, we are persuaded that the documents he cites were intended to be read in harmony with the [collective-bargaining agreement]. [The defendant's] Personnel Policy, under the heading "Disciplinary Action," specifically refers the reader to a separate section (not included in this record) for rules governing the discipline of represented employees. Likewise, the Director's Memo also indirectly references the [collective-bargaining agreement] by stating that when formal actions become necessary because of poor performance, "managers should invite the employee to obtain union representation if the employee is represented." These provisions lead us to conclude that the documents upon which [the plaintiff] relies are "inextricably intertwined with consideration of the terms of the labor contract." Consequently, they are preempted by § 301.

Garley v. Sandia Corp., 236 F.3d at 1210-11 (citations omitted). The Tenth Circuit noted that, although it was provided only with selected excerpts of the collective-bargaining agreement, "we nonetheless believe that the materials in our possession are adequate for us to arrive at this determination." Garley v. Sandia Corp., 236 F.3d at 1211. Similarly, upon a careful consideration of the documents upon which Carroll relies, the Court finds that the documents refer the reader to the CBA and are inextricably intertwined with the CBA.

The Merit System Ordinance, in section 3-1-2, provides that the Chief Administrative Officer -- the person responsible for administration of the merit system -- has the right "[t]o manage and to exercise judgment on all matters not specifically prohibited by this article or by a collective bargaining agreement in effect between the city employer and an employee organization." Merit System Ordinance § 3-1-2(C)(7). The Merit System Ordinance describes how, when there are layoffs, "voluntary transfers will be offered using seniority principles and respecting any applicable

collective bargaining agreements." Merit System Ordinance § 3-1-18(C). Section 3-1-27 provides:

> (A) The provisions of this article shall apply to all city employees; provided, however, that where a collective bargaining agreement, which has been ratified and approved by the Mayor in accordance with §§ 3-2-1 et seq., Labor-Management Relations, conflicts with a provision of this article, the collective bargaining agreement shall, with respect to those employees covered by the agreement, govern over such provision of this article unless it is one establishing:
>
> > (1) Classified and unclassified service;
> >
> > (2) Methods of service rating of unclassified employees; or
> >
> > (3) Methods of initial employment, promotion recognizing efficiency and ability as the applicable standards, and discharge of employees.
>
> (B) In the case of a conflict between a collective bargaining agreement and a provision establishing any of the above, this article shall govern.

Merit System Ordinance § 3-1-27. Generally, if there is a conflict between the provisions of the Merit System Ordinance and the CBA, the CBA will govern. If there is a conflict between the Merit System Ordinance's provisions regarding methods of promotion and the CBA's provisions regarding methods of promotion, the Merit System Ordinance will govern. It appears, however, that, absent a conflict between the provisions, the documents should be read in harmony, as neither will govern. Neither party has directed the Court's attention to conflicting provisions. Moreover, Carroll is not attempting to enforce promises that are in conflict with the CBA. Rather, his claims appear to allege breaches of promises that are in harmony with the promises in the CBA. Compare, e.g., City of Albuquerque Employee Equity Office: Retaliation, Exhibit to Reply, filed July 28, 2010 (Doc. 9-1)(stating that the City of Albuquerque shall not retaliate against a person for asserting his or her civil rights, or for participating in a civil rights investigation), with CBA § 25.1.9, at 11 ("Neither the grievant nor any participant in this grievance procedure shall suffer any retaliation, discrimination, restraint, coercion or reprisal as a result of filing a grievance or participating in the

-24-

procedure.").

The City of Albuquerque promulgates its Personnel Rules and Regulations pursuant to the Merit System Ordinance to interpret and implement the Ordinance.  See City of Albuquerque Personnel Rules and Regulations at 3, Exhibit to Reply, filed July 28, 2010 (Doc. 9-1)("Personnel Rules and Regulations").  The introduction to the Personnel Rules and Regulations states: "The Personnel Rules and Regulations shall be the only source and compilation of official directives for personnel policies unless otherwise superceded by Administrative Instructions or Collective Bargaining Agreements."  Personnel Rules and Regulations at 3.  The Personnel Rules and Regulations, under the heading "102. Application for Transfer or Promotion," refer the reader to the CBA: "Refer to collective bargaining agreements for procedures relating to transfers and promotions into positions covered by such agreements."  Personnel Rules and Regulations at 17.  Under "102.1 Classified Positions," the Personnel Rules and Regulations state: "All classified vacancies will be advertised to City employees, except probationary police, fire and correction officers or as specified in the collective bargaining agreements . . . ."  Personnel Rules and Regulations at 17.  Although section "710.  Reclassification of Positions" of Personnel Rules and Regulations does not refer the reader to the CBA, section "20.3 Classification/Recognition" in the CBA refers to the Personnel Rules and Regulations, further supporting the Court's conclusion that these documents are intended to be read harmoniously.  Section "20.3  Classification/Recognition" states:

> 20.3.1  Prior to revising existing classifications or establishing new classifications, the Employer will notify the Union of its anticipated action and offer the Union the opportunity to provide input and recommendations related to whether or not the affected positions shall be included in the Union's bargaining unit. . . .

> 20.3.2  An employee may request a position reclassification through the employee's department director and in accordance with the Employer's Rules and Regulations.

CBA § 20.3.1 to .2, at 10.

The Inter-Office Memorandum and the provision of the Procedures Manual upon which Carroll relies relate to the submission of Position Control Form (B3), which is used in reviewing a position's classification as set forth in section "710. Reclassification of Positions" of the Personnel Rules and Regulations.  The Personnel Rules and Regulations -- and specifically section 710 -- should be read in harmony with the CBA.  Because the Inter-Office Memorandum and Procedures Manual are meant to be read in harmony with the Personnel Rules and Regulations, they should also be read in harmony with the CBA.

Moreover, it appears that a determination whether the City of Albuquerque breached the alleged implied employment contract would require an analysis of what the CBA permitted the City to do.  Cf. Mock v. T.G. & Y. Stores, Co., 971 F.2d 522, 530 (10th Cir. 1995)("[A]n analysis of whether [the defendant] acted properly or not will inevitably require an analysis of what the CBA permitted.").  Carroll's claims for breach of implied employment contract arise out of the City of Albuquerque's alleged retaliation, failure to hire the most qualified applicant, and placement of Carroll in an non-existent position.  Carroll alleges that the City of Albuquerque retaliated against him by failing to reclassify his position, by failing to promote him, and by sabotaging and unfairly critiquing his job performance.  The City of Albuquerque Employee Equity Office policy prohibiting retaliation largely leaves open the definition of retaliatory behavior.  The Court must thus consider the rights of the parties to determine whether the City of Albuquerque retaliated against Carroll.  The City of Albuquerque has directed the Court's attention to several sections of the CBA that it alleges are relevant to its actions.  These sections include:  (i) Section 1.4 -- Employer Rights; (ii) Section 20 -- Promotional Procedures and Policies -- and specifically Section 20.3 -- Classification/Recognition; and (iii) Section 25.1.9, which states that "[n]either the grievant nor

any participant in this grievance procedure shall suffer any retaliation, discrimination, restraint, coercion or reprisal as a result of filing a grievance or participating in the procedure." The Court must analyze these sections in the CBA, and how they overlap with the policies that Carroll relies upon, to determine the parties' rights and whether the City of Albuquerque's actions were proper. See Cumpston v. Dyncorp Tech. Servs., 76 F. App'x at 864 ("Because the prohibition on 'harassment' . . . is devoid of descriptive content . . . there [is] no way of telling whether the standards were violated . . . without consulting the CBA to assess the opposing rights and privileges of the parties.").

The Court will also have to analyze the overlap between the policies upon which Carroll relies and the CBA in determining whether the City of Albuquerque acted properly in regards to Carroll's claims for "Breach of Implied Employment Agreement: No Official Position" and "Breach of Implied Employment Contract: Failure to Hire Best Qualified Person." Complaint ¶¶ 62-66, at 11-13. The Merit System Ordinance, the Personnel Rules and Regulations, the Inter-Office Memorandum, and Procedures Manual are meant to be read in harmony with the CBA. The Court will thus have to analyze the CBA, in additional to the other materials, to determine whether the City of Albuquerque acted properly. Because the Court's analysis of the City's actions will require the Court to consider the overlap between the CBA and other policies, and thus analyze the CBA, section 301 preempts Carroll's implied employment contract claims. See Galway v. Smith's Food and Drug Center, Inc., 1995 WL 734423, at *2; Cumpston v. Dyncorp Tech. Servs., 76 F. App'x at 864 (stating that, because "the CBA would be indispensable to a proper resolution of the implied-contract claim," the implied-contract claim is "preempted under the LMRA").

The documents upon which Carroll relies to support his implied employment contract claims are inextricably intertwined with the CBA, and the Court cannot ignore the CBA in its analysis

whether the policies and ordinances of the City of Albuquerque create an implied employment contract.  See Garley v. Sandia Corp., 236 F.3d at 1200 (finding that, when the defendant's personnel policy and memorandum referred to union representation, "the documents upon which [plaintiff] relies are inextricably intertwined with consideration of the terms of the labor contract.")(citation and internal quotation marks omitted); Edelman v. Western Airlines, Inc., 892 F.2d 839, 844 (9th Cir. 1989)(finding section 301 preemption over the plaintiff's breach-of-implied-contract claim, because "the interpretation of whether [the defendant's] procedures and regulations created an implied contract clearly would require a court to construe the [collective-bargaining] Agreement.").   Assessing the actions the City of Albuquerque took will also require the Court to construe the terms of the CBA and see how they overlap with the policies Carroll alleges were breached.  See Mowry v. UPS, 415 F.3d at 1157-58 (stating that section 301 preempted the plaintiff's claim, because "determining whether [the defendant's alleged conduct constituted the alleged claim] require[s] construction of [the defendant's] rights and obligations under the CBA").  Accordingly, the Court finds that Section 301 of the LMRA preempts Carroll's implied contract claims.  Because the Court finds that section 301 of the LMRA preempts Carroll's implied contract claims, the Court will deny the motion to remand and give Carroll ten days from the date of this order to amend his breach-of-implied-contract claims to state section 301 LMRA claims.  Only if Carroll files an amended complaint and does not state section 301 claims, but deletes his breach-of-implied-contract claims, will the Court remand the case to state court.

## II.    THE COURT WILL EXERCISE SUPPLEMENTAL JURISDICTION OVER CARROLL'S WHISTLEBLOWER CLAIM IF HE STATES SECTION 301 LMRA CLAIMS IN HIS AMENDED COMPLAINT.

The Court may exercise supplemental jurisdiction over Carroll's whistleblower claim, because his claims are "so related to claims in the action within [the Court's] original jurisdiction

that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.  The Court cannot separate the facts in Carroll's Complaint into those that relate to his claim under the New Mexico Whistleblower Act and those that relate to his implied employment contract claims.  Carroll's claims arise from one long chain of events.  Because his claims are based on a common nucleus of operative fact, the Court will thus exercise supplemental jurisdiction over his whistleblower claim if he states section 301 LMRA claims in his amended complaint.  See  Price v. Wolford, 608 F.3d at 702-03; Bonadeo v. Lujan, 2009 WL 1324119 at *18 ("There is no separate and independent incident.  One long chain of events culminated in [the plaintiff's] multiple allegations.  All of his claims are based upon a common nucleus of operative fact.  Accordingly, the Court retains supplemental jurisdiction over the related state claim.").

**IT IS ORDERED** that the Plaintiff's Motion to Remand, filed July 1, 2010 (Doc. 5), is denied.  Plaintiff Michael Carroll shall file an amended complaint within ten days of the entry of this order amending his breach-of-implied-contract claims to state claims under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Pia Gallegos
Albuquerque, New Mexico

*Attorney for the Plaintiff*

Deborah D. Wells
Kennedy, Moulton & Wells, P.C.
Albuquerque, New Mexico

*Attorney for the Defendant*